DECISION
Defendants-appellants, Paul E. Hackmann and Dirken T. Voelker, appeal from the judgment of the Franklin County Court of Common Pleas granting default judgment against Hackmann and awarding damages in favor of plaintiff-appellee, George Thomas Contractor, Inc. ("GTC").
This case involves GTC's renovations to a building located at 741 East Broad Street, Columbus. Voelker, as trustee, holds the title to the property. Hackmann, who is the beneficiary of the title trust, made all the decisions about the property that are pertinent to this appeal.[1]
Hackmann leased part of the building to Netcare Corporation ("Netcare"). The lease contemplated extensive remodeling and renovation of the building to suit Netcare's needs. Hackmann agreed to hire a contractor to renovate the building, and Netcare agreed to pay the costs of the renovations.
Netcare hired The Browne Group ("Browne"), an architectural firm, to prepare plans and specifications for remodeling of the first floor of the building. Pursuant to Browne's specifications, GTC bid on the remodeling project and entered into a contract with Hackmann. Under the terms of the contract, GTC agreed to perform the specified renovations, and Hackmann agreed to pay $194,840.98, with payments to be made on the basis of monthly draw requests.
Hackmann then entered into a separate agreement with Netcare, which outlined the procedure by which Netcare would ultimately pay for the renovations. Hackmann and Netcare agreed that Hackmann would make all the monthly draw payments to GTC. Netcare agreed to repay Hackmann for the first $100,000 of the project through increased lease payments. Netcare agreed to immediately pay Hackmann for all renovation costs incurred after the first $100,000.
GTC performed the first $100,000 of renovation work and Netcare paid its increased rent payments to Hackmann, as agreed. Netcare made three additional payments directly to Hackmann. Netcare was satisfied with the work performed by GTC, and Netcare's payments to Hackmann covered all of the draw requests submitted by GTC; however, Hackmann refused to pay the entire amount to GTC, prompting this lawsuit.
GTC initiated this lawsuit in November 1998. In its complaint, GTC sought to foreclose on a mechanic's lien, and it sought $63,815 in money damages for breach of contract, quantum meruit, unjust enrichment and conversion of funds. Although GTC was unable to serve its original complaint on Hackmann, Hackmann was personally served with a summons and an amended complaint on April 14, 1999.
Although Hackmann now concedes that he was served on April 14, 1999, he told his attorney at the time that he did not feel that he had been properly served. Consequently, on April 26, 1999, Hackmann's attorney telephoned GTC's counsel and asked whether Hackmann had been served. Although GTC's attorney indicated that Hackmann had been served, Hackmann's attorney also checked with the clerk of courts to see if proof of service had been filed. Proof of service had not been filed at the time that Hackmann's attorney called the clerk's office, and it was not filed until May 24, 1999.
On May 25, 1999, GTC moved for default judgment against Hackmann, who had yet to answer the amended complaint. On May 28, 1999, Hackmann filed a memorandum in opposition to the motion for default judgment. On the same date, Hackmann also filed an answer to the amended complaint and a counterclaim for breach of contract, breach of express warranty and breach of implied warranty. Although his answer was more than two weeks late, Hackmann did not seek permission from the court to file an untimely answer.
The trial court referred the matter to a magistrate, who held a hearing on the default judgment motion on August 5, 1999. In a decision rendered on November 16, 1999, the magistrate concluded that Hackmann had not provided sufficient reason for his failure to file a timely answer and decided that GTC's motion for default judgment should be granted. Hackmann objected to the magistrate's decision, but he did not order or file a transcript of the proceedings. The trial court adopted the magistrate's decision. In a sixteen-page opinion, the trial court overruled Hackmann's objections and granted judgment by default against Hackmann. The trial court also denied Hackmann's September 29, 1999 motion for leave to file an untimely answer and counterclaim.
In March 2000, the trial court held a four-day evidentiary hearing on the issue of damages. The court awarded damages to GTC in the amount of $39,490, with prejudgment interest at an annual simple interest rate of eighteen percent. Appellants filed a notice of appeal,[2] raising the following assignments of error:
 ASSIGNMENT OF ERROR NO. 1: THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO TREAT DEFENDANT-APPELLANT PAUL HACKMANN'S ANSWER TO THE AMENDED COMPLAINT AND COUNTERCLAIM AS BEING PROPERLY FILED OR IN ORDERING A FULL EVIDENTIARY HEARING TO ESTABLISH THE FACTS.
 ASSIGNMENT OF ERROR NO. 2: THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN OVERRULING DEFENDANT-APPELLANT PAUL HACKMANN'S MOTION FOR LEAVE TO FILE HIS ANSWER AND COUNTERCLAIM OUT OF RULE PURSUANT TO RULE 6(B)(2), OHIO RULES OF CIVIL PROCEDURE.
 ASSIGNMENT OF ERROR NO. 3: THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN SUSTAINING OBJECTIONS TO EVIDENCE CONCERNING PLAINTIFF-APPELLEE'S ACTION INVOLVING DAMAGE TO THE ELEVATOR, THE PARKING LOT, DESTRUCTION OF MARBLE PARTITIONS AND LIGHTING FIXTURES.
 ASSIGNMENT OF ERROR NO. 4: THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING EIGHTEEN PERCENT (18%) PREJUDGMENT INTEREST.
 ASSIGNMENT OF ERROR NO. 5: THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN RULING DEFENDANT-APPELLANT BARGAINED AWAY RIGHT OF APPROVAL OF WORK AND THAT APPELLEE WAS THE THIRD-PARTY BENEFICIARY OF THE CONTRACT BETWEEN NETCARE AND THE BROWNE GROUP ARCHITECTS.
 ASSIGNMENT OF ERROR NO. 6: THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT RULED DEFENDANT-APPELLANT COULD NOT UTILIZE THE LIEN WAIVERS TO ESTABLISH APPELLEE GAVE APPELLANT CREDIT FOR VARIOUS REASONS AND NOT SOLELY AS EVIDNECE AS TO APPELLEE'S POOR WORKMANSHIP.
We overrule Hackmann's assignments of error and affirm the judgment of the trial court.
In his first assignment of error, Hackmann contends that the trial court erred by failing to treat Hackmann's answer to the amended complaint as though the answer had been timely filed. To resolve the first assignment of error, we must determine whether the trial court erred in adopting the magistrate's decision that the answer was untimely. When reviewing an appeal from a decision of a trial court adopting a magistrate's decision under Civ.R. 53(E)(4), the appellate court must determine whether the trial court abused its discretion. TheSpring Works, Inc. v. Sarff (June 20, 1996), Franklin App. No. 96APE02-127, unreported, at 7.
We conclude that the trial court did not abuse its discretion in adopting the magistrate's decision that the answer was untimely. Civ.R. 12(A)(1) states that "[t]he defendant shall serve his answer within twenty-eight days after service of the summons and complaint upon him." Hackmann stipulated that he was served the summons and amended complaint on April 14, 1999. Pursuant to Civ.R. 12(A)(1), therefore, Hackmann had until May 12, 1999, to serve his answer. He did not serve his answer within the time proscribed by the civil rules; rather, Hackmann filed an untimely answer and a counterclaim on May 28, 1999, three days after GTC moved for default judgment.
Hackmann contends that his answer was nonetheless timely filed because GTC did not file proof of service of the amended complaint until May 24, 1999, in violation of the requirements imposed by Civ.R. 4.6(E). Civ.R. 4.6(E) states the following:
 The attorney of record or the serving party shall be responsible for determining if service has been made and shall timely file written instructions with the clerk regarding completion of service notwithstanding the provisions in Civ.R. 4.1 through 4.6 which instruct a clerk to notify the attorney of record or the serving party of failure of service of process.
GTC filed proof of service of the amended complaint with the clerk on May 24, 1999, forty days after Hackmann had been served.
We do not agree that delay in filing a proof of service negates a defendant's obligation, pursuant to Civ.R. 12(A)(1), to serve an answer within twenty-eight days of service of the summons and complaint. Civ.R. 12(A)(1), which clearly controls the timing for the filing of an answer, makes no mention of proof of service; nor does Civ.R. 4.6(E) indicate that it has an impact on the timing for answering a complaint.
Hackmann has not cited any authority that would support his argument that a delay in filing proof of service extends in any way the timing requirements imposed by Civ.R. 12(A)(1). The case offered by Hackmann,Compass Transp., Inc. v. Good (May 22, 1995), Mahoning App. No. 93 C.A. 220, unreported, is inapposite. In Compass Transp., the clerk of courts' file did not contain a certificate confirming that the clerk had sent a copy of a complaint to the defendant's address, as required by Civ.R. 4.6(D). Id. The Compass Transp., court concluded that, because there was no certificate of mailing and the defendant testified that he never received a copy of the complaint, the trial court did not err in finding that the plaintiff failed to demonstrate that the defendant had been served with a copy of the complaint. Id. Compass Transp., has no bearing whatsoever on the impact of Civ.R. 4.6(E) upon the timing for filing an answer to a properly served complaint.
Alternatively, Hackmann contends in his first assignment of error that the trial court erred by failing to order a full evidentiary hearing on the issue of the timeliness of Hackmann's answer. Hackmann's argument fails for at least two reasons.
First, there is no indication that Hackmann was hampered in any way from presenting evidence. On June 9, 1999, the trial court referred the matter to a magistrate to conduct a hearing on GTC's motion for default judgment. The record demonstrates that the magistrate held a hearing on this issue on August 5, 1999. There is no indication that the parties attempted to or were prohibited from offering exhibits or witness testimony during the hearing. It is the obligation of the parties, and not the court, to introduce adequate evidence. We cannot agree with Hackmann's assertion that the trial court erred by failing to order the parties to provide more evidence.
Second, although he objected to the magistrate's decision on the motion for default judgment, Hackmann did not order and file a transcript of the magistrate's hearing. Civ.R. 53(E)(3)(b) provides, in pertinent part, as follows:
 * * * Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available. A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule.
Because Hackmann did not order a copy of the transcript, the trial court properly adopted the magistrate's findings of fact. See State ex rel.Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 730. The trial court adopted the following facts from the magistrate's decision:
 * * * Plaintiff filed a complaint last November, and that complaint was not served on Mr. Hackmann ("Defendant"). Later, an amended complaint was filed. It is stipulated that the amended complaint was properly served on Defendant on April 14, 1999. On April 26, 1999, in response to Defendant's assertion that he didn't feel he was properly served, Attorney Grey W. Jones called Plaintiff's counsel, Timothy G. Crowley. Mr. Jones asked Mr. Crowley whether or not service had been obtained on Defendant. Mr. Crowley indicated that service had been obtained.
 Mr. Jones checked with the Clerk of Courts, to see if proof of service had been filed, pursuant to Civ.R. 4.6, which required "timely" filing of proof of service. The proof of service was not filed at that time, and would not be filed until May 24, 1999, approximately 40 days after service had been obtained on Defendant, or about twelve (12) days out of rule.
* * *
 * * * The answer filed without leave of court was filed on May 28, 1999. * * *
We conclude that, on the basis of this record, the trial court had adequate evidence upon which to grant GTC's motion for default judgment. Moreover, Hackmann has not identified any dispute of fact that might have impacted the magistrate's decision or the trial court's decision regarding the motion for default judgment.
Hackmann contends that, pursuant to Cathey v. BancOhio Natl. Bank
(Feb. 8, 1991), Franklin App. No. 90AP-243, unreported, the trial court was required to hold an evidentiary hearing. Cathey is not instructive, however, as it is different from the instant matter in several respects.
At issue in Cathey was whether the trial court abused its discretion in granting a defendant's motion for leave, pursuant to Civ.R. 6(B), to file an untimely answer. Id. at 3. Under Civ.R. 6(B), a trial court has discretion, upon motion, to accept an untimely answer if the defendant's failure to meet the deadline was a result of "excusable neglect." TheCathey court concluded that conflicting affidavits created an issue of fact regarding the reason that the defendant failed to meet the answer deadline. Id. at 4-5. Without an evidentiary hearing, the court concluded the trial court could not make the appropriate factual finding regarding whether defendant missed the answer deadline as a result of excusable neglect. Id. at 5.
In the instant matter, Hackmann did not file a Civ.R. 6(B) motion for leave to file an untimely answer until September 29, 1999, nearly two months after the default judgment hearing. The factual and legal issues involved in the motion for default judgment, therefore, did not include whether Hackmann's delay in answering was a result of excusable neglect.[3] In further contrast with Cathey, there was no indication in the instant matter, by affidavit or otherwise, that the parties disputed any of the facts relating to the circumstances surrounding the service of the amended complaint. The parties stipulated that the amended complaint was served on April 14, 1999, a fact that Hackmann reiterated in his testimony at the damages hearing. In light of these distinctions, Cathey is not instructive.
Because we conclude that the trial court did not abuse its discretion in adopting the magistrate's decision that Hackmann's answer was untimely, we overrule Hackmann's first assignment of error.
In his second assignment of error, Hackmann contends that the trial court erred when it denied Hackmann's Civ.R. 6(B)(2) motion for leave to file an untimely answer and counterclaim.
Civ.R. 6(B)(2) provides that, upon motion, a trial court may in its discretion permit a defendant to file an untimely answer if the defendant's failure to file the answer within the time provided by the civil rules is a "result of excusable neglect." "A trial court's Civ.R. 6(B)(2) determination is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of discretion." State ex. rel. Lindenschmidt v. Butler Cty. Bd. of Commrs.
(1995), 72 Ohio St.3d 464, 465. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Id.
We conclude that the trial court did not abuse its discretion when it denied Hackmann's Civ.R. 6(B)(2) motion. Hackmann admits that he was properly served with an amended complaint on April 14, 1999. Pursuant to Civ.R. 12(A)(1), therefore, Hackmann's answer was due on May 12, 1999, twenty-eight days after service of the amended complaint. Hackmann did not move for leave to file an untimely answer and counterclaim until September 22, 1999, more than four months after the answer was due. He argues that he delayed filing a Civ.R. 6(B)(2) motion "because he felt his pleadings were timely based on when Appellee filed his return of service."
We do not agree that Hackmann's delay constitutes excusable neglect. For the reasons we have already discussed, the civil rules required that Hackmann file his answer by May 12, 1999. GTC moved for default judgment on May 25, 1999, articulating its belief that Hackmann missed the May 12, 1999 filing deadline. Hackmann opposed the motion on May 28, 1999, and the parties attended a hearing on the motion for default judgment on August 5, 1999. Hackmann did not file his Civ.R. 6(B)(2) motion until nearly two months after the hearing on the motion for default judgment, even though he was on notice since at least May 1999, that there may have been a problem with the timeliness of his answer.
None of the cases cited by Hackmann persuades us that Hackmann's delinquency constituted excusable neglect, as none of them involved a party who waited for several months after he was on notice that he may have missed a deadline before he moved for leave pursuant to Civ.R. 6(B). We conclude that the trial court did not abuse its discretion in failing to grant Hackmann's Civ.R. 6(B) motion for an extension, and we overrule Hackmann's second assignment of error.
We consider Hackmann's third and sixth assignments of error together, as they both involve the trial court's rulings regarding the admissibility of evidence. By his third assignment of error, Hackmann contends that the trial court erred when it sustained objections to the admission of evidence concerning alleged damage to an elevator, parking lot, marble partitions and lighting fixtures. According to Hackmann, the trial court improperly excluded this evidence on the basis that it was being offered by Hackmann to establish a claim for negligence and, because the statute of limitations had run, Hackmann did not have a viable claim for negligence. Hackmann contends that the trial court should have considered this evidence because it was relevant to Hackmann's defenses to GTC's claim for damages. By his sixth assignment of error, Hackmann contends that the trial court erred when it ruled that Hackmann could not utilize lien waivers to establish that GTC gave Hackmann credit for amounts paid. Hackmann argues that the lien waivers were relevant to Hackmann's defenses to GTC's claim for damages.
"The admission of evidence is generally within the sound discretion of the trial court, and a reviewing court may reverse only upon the showing of an abuse of that discretion." Peters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296, 299.
We have reviewed the record and, contrary to Hackmann's allegations, we conclude that the trial court took great care during the four-day hearing to admit evidence that had any bearing whatsoever upon the issue of damages sought by GTC. In fact, the portions of the record cited by Hackmann demonstrate that the trial court took pains to liberally admit any evidence that might impact on the issue of damages, as demonstrated by the following exchange during the damages hearing:
 Q: Okay. Now, what is your understanding of what occurred and what happened to that particular elevator?
* * *
 [PAUL HACKMANN]: Well, they used water to keep their diamond bits from scratching or something. So all that sludge ended up right in the elevator.
THE COURT: Yeah.
[PAUL HACKMANN]: And damaged it.
 MR. CROWLEY: Objection, Your Honor. I believe we're hearing a negligence claim which would be barred by the statute of limitations. Also this is the Defendant who's in default. Anything regarding the elevator I think should not be even discussed here. Plus I believe the testimony of virtually everybody, and I believe including this witness, was that he had not agreed to pay for any elevator work and in fact has refused to pay and has not done so.
* * *
 THE COURT: Let me cut in here for a second. I'd like to ask counsel for both sides, is there a claim by [George Thomas Contracting] for work done on the elevator, repairs to the elevator or anything like that?
 MR. CROWLEY: Your Honor, there is a small amount on one of the change orders. I believe it is the one for $79,782.40 [sic], which is 23D. I'll tell you exactly how much that is in terms of dollars and cents.
 THE COURT: Well, if there's anything there then I'm going to allow him to inquire because it's some claim. [Tr. 786-787, 791.]
Contrary to Hackmann's contention, the trial court allowed Hackmann to testify about the alleged damage to the elevator. In fact, Hackmann has not identified any ruling by the trial court to exclude specific testimony that would have been relevant to GTC's claim for damages or Hackmann's defenses to those claims.
Similarly, the portion of the record cited by Hackmann demonstrates that, contrary to Hackmann's assertion, the trial court did not exclude evidence of lien waivers to the extent that the evidence impacted GTC's alleged damages. The court's decision to admit evidence of lien waivers is demonstrated by the following portion of its decision:
 Hackmann asserts that the waivers of lien amounts to an accord and satisfaction; that there was a dispute as to work performed and plaintiff agreed to waive payment for the amounts in the waivers. [GTC] points out that, having failed to file an answer, the defendant cannot raise what amounts to an affirmative defense. Civ.R. 8(C). The court agrees that Mr. Hackmann has not plead any affirmative defenses as required by the rule. However, while not available as an affirmative defense, the waivers may be admissible for other purposes. Hackmann argues that the lien waivers are evidence that plaintiff failed to perform properly and therefore is not entitled to the damages which it claims.
 The court agrees that the waivers are admissible on the basis advanced by defendant Hackmann. * * *
Because we conclude that the trial court did not abuse its discretion in ruling on the admissibility of evidence relevant to the calculation of damages, we overrule Hackmann's third and sixth assignments of error.
In his fourth assignment of error, Hackmann argues that the trial court erred in awarding prejudgment interest at a rate of eighteen percent. Hackmann argues that the language regarding interest was not a part of the written contract between Hackmann and GTC. Hackmann further argues that, at best, the interest language in the contract between GTC and Hackmann was ambiguous, and that the ambiguity should be resolved in Hackmann's favor.
Generally, courts presume that the intent of the parties can be found in the written terms of the contract. Shifrin v. Forest City Ent., Inc.
(1992), 64 Ohio St.3d 635, 638. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm
(1995), 73 Ohio St.3d 107, 108. Questions of law are subject to our denovo review. Id. If, however, the language of the contract is unclear or ambiguous, "extrinsic evidence [will] be considered in an effort to give effect to the parties' intentions." Shifrin, at 638. "The meaning of terms used in a contract, if ambiguous, is a question of fact and will not be overturned on appeal absent a showing that the trial court abused its discretion." Ohio Historical Society v. General Maintenance Engineering Co. (1989), 65 Ohio App.3d 139, 147.
We disagree with Hackmann's contention that language regarding interest was not a part of the contract, as the following words appear immediately to the left of the parties' signatures: "Net 30 days, 1 1/2% interest on unpaid balance." By the express written terms of the contract, therefore, we conclude that the parties intended that interest would be assessed on unpaid portions of the balance. Even if we were to conclude, as Hackmann urges, that the language is ambiguous regarding the period during which one and one-half percent interest accrues, testimony at the damages hearing provided ample extrinsic evidence of the parties' intentions. Both GTC and Hackmann, the signatories to the contract, testified that the contract included a provision for payment of interest at one and one-half percent per month, which translates into an eighteen percent annual interest rate. We conclude that the trial court did not err in assessing prejudgment interest at an eighteen percent annual rate and we, therefore, overrule Hackmann's fourth assignment of error.
In his fifth assignment of error, Hackmann contends that the trial court erred in ruling that Hackmann had granted to Netcare and Browne the right to approve the work performed by GTC. Hackmann also contends that the trial court erred in ruling that GTC was an intended third-party beneficiary to the agreement between Hackmann and Netcare. To address this assignment of error, we must review the agreement between Hackmann and Netcare which pertains to the right of approval of GTC's work. Because the agreement is clear and unambiguous, we review its language denovo. Nationwide Mut. Fire Ins. Co., at 108. Applying this standard of review, we conclude that Hackmann's assignment of error lacks merit.
In his agreement with Netcare, Hackmann outlined the following procedure by which Netcare would ultimately pay the renovation costs:
 1. I [Hackmann] am to pay the first $100,000 of the renovation costs with reimbursement to be provided in the lease.
 2. You [Netcare] are to pay the renovation costs in excess of $100,000.
 3. You previously approved and I have paid the contractor (George Thomas Contractor, Inc.) the first draw in the amount of $34,201.60. Hereafter, draw requests will be processed in the following manner:
 a) When I receive a draw request from the contractor, I will furnish a copy of it to the architect (The [Browne] Group) for approval.
 b) The architect is to notify me in writing whether or what portion of the draw request you approve for payment.
 c) You are then to notify me in writing whether or what portion of the draw request you approve for payment.
 d) I will then pay the contractor the amount that has been approved.
 4. At such time as the costs exceed $100,000, I will invoice you for the amount which has been approved for payment. You will issue a check to me and I, in turn, will pay the contractor.
 5. It will be essential that we all act promptly to process the draw requests so we will not be in default under the construction contract.
By its plain language, this agreement provided that Hackmann would "pay the contractor the amount that has been approved" by Browne and Netcare. Although the agreement plainly contemplates approval of GTC's work by Browne and Netcare, it contains no provision for Hackmann to approve of or reject GTC's draw request. We agree with the trial court's determination that Hackmann granted to Browne and Netcare the right to approve of GTC's work.
We reject Hackmann's argument for an additional reason. The trial court's determination that Hackmann had contracted away his right of approval of the remodeling work was not dispositive of the court's award of damages. In its decision, the trial court expressly stated that "[t]he fact that Hackmann gave up his right of approval over [GTC's] work is not dispositive of the issues before the court. [GTC] still must prove entitlement to damages by a preponderance of the evidence. To do so, plaintiff must prove that the work was completed properly and in a workmanlike manner." Consequently, the trial court declined to find that Hackmann was liable for damages solely because Browne and Netcare had approved of all the work performed by GTC. Rather, the trial work looked for independent evidentiary verification to support GTC's claim for damages.
Because we conclude that the trial court reached the correct legal conclusion and further supported its judgment with additional evidentiary evidence, we overrule Hackmann's fifth assignment of error.
For the foregoing reasons, we overrule appellants' assignments of error and the judgment of the Franklin County Court of Common Pleas is affirmed.
 _________________ BOWMAN, J.
PETREE and KENNEDY, JJ., concur.
[1] Although both Hackmann and Voelker are designated as appellants on the notice of appeal, we note that the trial court granted default judgment and awarded damages solely against Hackmann. Consequently, in their assignments of error, Voelker and Hackmann refer to rulings that only pertain to Hackmann. Where appropriate, we address our opinion specifically to appellant Hackmann.
[2] Yet unresolved by the trial court is an issue regarding the award of attorney fees to Fifth Third Bank, a defendant and cross-claimant in this action who is not involved in any of the issues currently before this court. Notwithstanding the pending issue of attorney fees, the trial court's judgment entry granting default judgment against Hackmann and awarding damages in favor of GTC is properly before this court based on the trial court's express finding, pursuant to Civ.R. 54(B), that there is no just reason for delay of this appeal.
[3] Even though he filed his Civ.R. 6(B)(2) motion for leave to file an amended complaint nearly two months after the evidentiary hearing, Hackmann objected to the magistrate's decision on the grounds that the magistrate did not consider whether Hackmann's untimely answer was the result of excusable neglect. Although the trial court noted that Hackmann had not filed the Civ.R. 6(B)(2) motion until after the evidentiary hearing, it still evaluated whether Hackmann's untimely answer was the result of excusable neglect and determined that it was not.